# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMPAGNIE DES GRANDS HÔTELS D' AFRIQUE S.A., ) ) ) ) Plaintiff, ) ) v. ) ) STARWOOD CAPITAL GROUP GLOBAL I LLC and STARMAN HOTEL HOLDINGS LLC, ) ) ) ) Defendants. ) ) | C.A. No. _____ Underlying Litigation: 1:18-cv-654-RGA United States District Court District of Delaware |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL NON-PARTY BARRY STERNLICHT TO COMPLY WITH DEPOSITION SUBPOENA

Pursuant to Federal Rules of Civil Procedure 30 and 45, Plaintiff Compagnie des Grands Hôtels d'Afrique S.A. ("CGHA") respectfully moves to compel non-party Barry S. Sternlicht to comply with a duly-issued and duly-served Rule 45 subpoena for testimony in the underlying action pending in the United States District Court for the District of Delaware, *Compagnie des Grands Hotels d'Afrique*, *S.A. v. Starwood Capital Group Global I LLC*, 1:18-cv-654-RGA (D. Del.) (the "Underlying Litigation").[1] As explained in detail below, CGHA requests that this Court compel Mr. Sternlicht to appear at a deposition as requested in Plaintiff's Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena"). (Ex. 3.). CGHA further requests its fees and expenses incurred in connection with this motion pursuant to Rule 45(f).

---

[1] CGHA's complaint (the "Complaint") and the Protective Order filed/entered in the Underlying Litigation are appended as Exhibits 1 and 2, respectively, to the Transmittal Affidavit of Sarah E. Delia, Esq. filed contemporaneously herewith (the "Delia Affidavit"). Exhibit references throughout this motion are to exhibits appended to the Delia Affidavit.

**INTRODUCTION**

In the Underlying Litigation, CGHA seeks to enforce against the sole remaining defendant, Starman Hotel Holdings LLC ("Starman"), an arbitration award issued in 2015 in favor of CGHA by the ICC International Court of Arbitration in London (the "Award"). The Award was issued against a former subsidiary of Starman, a Moroccan entity called Woodman Maroc S.a.r.l. ("Woodman"), in the dollar-equivalent amount of approximately $57.1 million (plus 6% annual interest running from May 2015). The amount awarded to CGHA remains unpaid. Through a series of machinations, Starman rendered Woodman judgment-proof many months after Woodman had appeared in the arbitration and answered, but prior to the time the Award was issued; and CGHA now relies on an alter ego theory to pierce the corporate veil and enforce the Award against Starman.

No individual is more central to CGHA's alter ego allegations against Starman than Mr. Sternlicht. He is introduced in ¶ 5 of the Complaint. (Ex. 1). At ¶ 23 of the Complaint, Mr. Sternlicht is designated a "relevant non-part[y]" based on his core role in the events upon which CGHA bases its claim against Starman. (*Id.*). And at ¶¶ 86-89, his leadership role in structuring the transaction through which Starman made Woodman its alter ego is discussed in detail. (*Id.*) Further, Starman has disclosed that Mr. Sternlicht was a "manager" of Starman from the time when it was formed in 2005 through November 2011, which is a key period in the Underlying Litigation. (Ex. 4, p. 6). In short, the relevance of Mr. Sternlicht's testimony to the issues to be decided in the alter ego case against Starman is patently obvious, and his refusal to appear for a deposition as required by the subpoena is indefensible.

**BACKGROUND**

A.  **The Management Agreement and the Meridien Transaction**

CGHA, a corporation organized under the laws of Morocco, is the long-time owner of a luxury hotel in Casablanca, Morocco called the Royal Mansour Hotel (the "Hotel"). (Ex. 1, ¶ 18.) In 1989, CGHA entered into a long-term management agreement (the "Management Agreement") with an affiliate of an international hotel group (the "Manager") to manage the Hotel. (*Id.*, ¶¶ 28, 29.)

Prior to 2005, the Manager was acquired by Le Meridien Group ("Meridien"). (*Id.*, ¶ 33.) In 2005, Starwood Capital Group Global I LLC ("SCG") and the investment bank known as Lehman Brothers ("Lehman") formed Starman as a Delaware limited liability corporation to acquire certain owned and leased hotel assets from Meridien. Among the assets acquired by Starman was the Manager of the Hotel, which subsequently was renamed Woodman.[2] (*Id.*, ¶¶ 35, 41.) Respective affiliates of SCG and Lehman each held a 50% interest in Starman.

As a condition to Starman's acquisition of the Meridien hotel assets, SCG and Lehman required that the acquired properties would be managed by Starwood Hotels & Resorts Worldwide, Inc., including one or more of its affiliates (collectively, "Starwood Hotels"). At the time, SCG and Starwood Hotels were closely affiliated through Mr. Sternlicht's control of each. Mr. Sternlicht founded SCG in 1991, and he founded Starwood Hotels in the mid-1990s. During the planning and negotiation of the Starman acquisition from Meridien, Mr. Sternlicht was Chief Executive Officer and Chairman of both SCG and Starwood Hotels. Up through at least 2004, Mr. Sternlicht was the largest non-institutional shareholder of Starwood Hotels, holding over 4%

---

[2] Prior to a change of name to "Woodman Maroc S.a.r.l." in 2006, Woodman's name was "Meridien Maroc S.a.r.l." CGHA uses the name Woodman to refer to the entity under its prior name, as well.

of its publicly-traded shares. (*Id.*, ¶ 5.) Pursuant to the plans crafted by Mr. Sternlicht for Starman's 2005 acquisition of the Meridien hotel assets, Starman compelled its just-acquired subsidiary Woodman, as Manager of the Hotel, to enter into an operating agreement with Starwood Hotels, pursuant to which Woodman was forced to delegate all of its responsibilities as Manager to Starwood Hotels.

### B. Woodman Defaults Under the Management Agreement

From the beginning of Starman's ownership of Woodman, Woodman's performance as Manager of the Hotel under the Management Agreement – as carried out by its designated agent, Starwood Hotels, from 2005 forward – was severely deficient. CGHA repeatedly challenged Woodman's performance as Manager, finally declaring a default under the Management Agreement in 2012. However, that same year, Starman set the stage for its future disposal of Woodman by secretly orchestrating a series of three same-day sequential transfers of ownership of Woodman through three separate entities in Luxembourg and the Netherlands. (Ex. 1, ¶¶ 50, 54, 74-76.)

In 2013, CGHA commenced the arbitration against Woodman before the ICC International Court of Arbitration in London, alleging breach of the Management Agreement. (*Id.*, ¶ 58.) Woodman initially appeared in the arbitration and answered. But ten months later, Starman sold Woodman's parent and other entities for the sum of €100 to a newly-formed and unknown U.K. entity called Maquay Investments Ltd. ("Maquay") (*id.*, ¶¶ 58, 59), and Maquay immediately placed Woodman's parent in liquidation and caused Woodman to withdraw from the arbitration (*id.*, ¶¶ 61, 66, 73). Following Woodman's withdrawal, the arbitration continued through a trial, and on May 6, 2015, the arbitrators issued the Award in favor of CGHA,

assessing damages against Woodman in the dollar-equivalent amount of approximately $57.1 million, with interest to run at 6% per annum until the Award was paid. (*Id.*, ¶ 73.)

The Award was an 82-page reasoned decision. (Ex. 1, ¶ 73.) Among other things, the Award set out negative findings regarding Starman's machinations in the sale of Woodman's parent to Maquay, and the subsequent liquidation of Woodman's parent, long after the arbitration had started. The Award found that those facts suggested that Maquay, "which does not appear in any way related to the international five-star hospitality industry," had been "created for the sole purpose of receiving the shares of [Woodman's] sole shareholder before being . . . placed in voluntary liquidation and, as a result, avoid any possible liabilities under the Management Agreement." (*Id.*, ¶ 78.)

### C. CGHA Commences the Underlying Litigation

On April 30, 2018, CGHA initiated the Underlying Litigation. The Complaint alleges that, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), Starman is liable for the Award issued against Woodman based on Starman's use of Woodman as an alter ego.[3] (*See* Ex. 1.).

### D. Mr. Sternlicht's Core Relevance to CGHA's Alter Ego Claim Against Starman

Mr. Sternlicht is front and center in the allegations in the Complaint that support CGHA's alter ego claim against Starman. His lead role as the architect of the transaction through which Starman was created and acquired Woodman are discussed at length in the Complaint.

---

[3] The Complaint initially sought to hold both Starman and SCG liable under an agency theory of liability. By order dated January 9, 2019, the Delaware court dismissed the agency claim against SCG and Starman but allowed CGHA to proceed on its alter ego claim against Starman.

- Mr. Sternlicht founded SCG in 1991, and he was its Chief Executive Officer and Chairman at all relevant times.  (Ex. 1, ¶¶ 5, 23, 86.)

- Mr. Sternlicht founded Starwood Hotels in the mid-1990s, and he managed it for nearly a decade thereafter, serving as its Chief Executive Officer and Chairman. (*Id.*, ¶¶ 5, 22-23, 88-89.)   Starwood Capital Group: Senior Executives, https://starwoodcapital.com/team/senior-executives/ (last visited Aug. 12, 2019).)

- Mr. Sternlicht was Chief Executive Officer and Chairman of both SCG and Starwood Hotels during the structuring and negotiation of Starman's acquisition of the Meridien hotel assets.  (*Id.*, ¶¶ 86, 89.)

- At the time of the relevant events, Mr. Sternlicht was a significant shareholder of Starwood Hotels.  (*Id.*, ¶¶ 5, 86.)

- Starwood Hotels disclosed in public filings that "[a]s a consequence" of Mr. Sternlicht's roles at SCG and Starwood Hotels, he had "the ability to exercise certain influence over the affairs of" Starwood Hotels.  (*Id.*, ¶ 89.)

- In a 2005 press release announcing Starman's acquisition of Meridien's hotel assets, Mr. Sternlicht personally stated that "it is rewarding to see this transaction consummated after almost two years of complex negotiations."  (Ex. 1, ¶ 86; Press Release, Starwood Capital Group Global, L.L.C., Starwood Capital Group Acquires Le Meridien Hotels & Resorts Portfolio (Nov. 25, 2005), available at https://www.hospitalitynet.org/news/4025416.html (last visited Aug. 12, 2019).)

- A condition of the Starman acquisition of the Meridien hotel assets was that Starman would enter into management agreements for those hotels with Starwood Hotels.  (*Id.*, ¶ 87; European Commission Press Release IP/05/996, Mergers: Commission approves joint acquisition of 23 Le Meridien hotels by Lehman, SCG and Starwood (July 20, 2005).)

- In the same 2005 press release, Mr. Sternlicht highlighted the prominent role he had procured for Starwood Hotels as day-to-day manager of the acquired hotel assets, stating that the "transaction is an excellent strategic fit for Starwood Hotels and . . . Starwood Hotels' operational expertise could improve the performance of these assets."  (*Id.*, ¶¶ 86-87; Press Release, Starwood Capital Group Global, L.L.C., Starwood Capital Group Acquires Le Meridien Hotels & Resorts Portfolio (Nov. 25, 2005), available at https://www.hospitalitynet.org/news/4025416.html (last visited Aug. 12, 2019).)

Based on the central role Mr. Sternlicht played in Starman's use of Woodman as an alter ego, CGHA identified him in its initial disclosures pursuant to Federal Rule of Civil Procedure 26(f) as an individual likely to have discoverable information.  (Ex. 5 at Ex. A, p. 8.)  Moreover,

6

after discovery commenced, Starman disclosed additional information that demonstrates even more clearly Mr. Sternlicht's centrality to CGHA's alter ego claim against Starman. In Starman's responses to interrogatories served by CGHA, Starman disclosed that Mr. Sternlicht had been a "manager" of Starman from the time when it was formed in July 2005 to November 2011 (Ex. 4, p. 6.) – a key six-year period in which critical events relating to Starman's use of Woodman as its alter ego took place. Of the individuals who were Starman managers as of the time of Starman's founding in July 2005, Mr. Sternlicht is unique in terms of the length of his tenure as a Starman manager.

### E. CGHA Issues the Subpoena to, and Serves It On, Mr. Sternlicht

On July 18, 2019, CGHA filed a notice of deposition under Federal Rule of Civil Procedure 30 in the Underlying Litigation, attaching the duly-issued Subpoena directed to Mr. Sternlicht. (Ex. 6.) The Subpoena set a deposition date of August 14, 2019, with the deposition to take place in Stamford, Connecticut. On July 23, 2019, counsel for Mr. Sternlicht, who are also counsel for Starman, accepted service of the Subpoena via email on behalf of Mr. Sternlicht and confirmed that Mr. Sternlicht waived any objection based on improper service. (Ex. 7.)

### F. Mr. Sternlicht Refuses to Comply with the Subpoena or Move to Quash

On July 26, 2019, counsel for Mr. Sternlicht and Starman informed counsel for CGHA of Mr. Sternlicht's objections to the Subpoena. (Ex. 8.) Counsel for Mr. Sternlicht and Starman argued that, since Mr. Sternlicht is Chief Executive Officer and Chairman of SCG, CGHA's request to depose Mr. Sternlicht was "an effort to evade" the Delaware court's dismissal of the agency claim that CGHA had asserted in the Complaint against SCG. (*Id.*) Counsel added: "To the extent that CGHA's purpose for deposing [Mr. Sternlicht] is to obtain information about

7

Starman, . . . there are hosts of other people . . . from whom that information could more readily be obtained." (*Id.*)

On July 29, 2019, counsel for CGHA responded to the objections of counsel for Mr. Sternlicht and Starman, denying that the subpoena to Mr. Sternlicht was "improper in any way" and explaining the relevance of information possessed by Mr. Sternlicht. (Ex. 9.) Counsel stated: "Mr. Sternlicht has been involved in many aspects of the relevant timeline and history of this action. In fact, he has gone on public record with his commentary about Starwood's acquisition of the Meridian assets, which prompted the formation of Starman to serve as the vehicle for that transaction." (*Id.*) Counsel added that, to the extent Mr. Sternlicht did not intend to make himself available on the requested date or a mutually agreeable alternative set in advance of the noticed date, he would need to move to quash the subpoena consistent with applicable rules. (Ex. 7.)

On July 31, 2019, counsel for Mr. Sternlicht and Starman replied, reiterating their concerns and stating that Mr. Sternlicht would "appear for a deposition only if compelled to do so by order of the court." (Ex. 10.) The noticed deposition date of August 14, 2019 passed without any further communication from Mr. Sternlicht. Mr. Sternlicht has not filed a motion to quash the Subpoena or sought entry of a protective order, but rather has simply taken the position that he will not, and cannot, be deposed, despite his obvious centrality to CGHA's alter ego claim against Starman.

On August 28, 2019, counsel for CGHA spoke with counsel for Mr. Sternlicht and Starman to confirm that there had been no change in Mr. Sternlicht's position, in part due to Starman's disclosure of Mr. Sternlicht's prior role as a Manager of Starman. On September 3, counsel for Mr. Sternlicht and Starman confirmed there been no change.

8

**ARGUMENT**

    A.    **Legal Standard**

Pursuant to Rule 45(a)(1)(A)(iii), any party may serve a subpoena commanding a non-party to "attend and testify; [or] produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii); *see also* Fed. R. Civ. P. 30(a)(1) ("The deponent's attendance may be compelled by subpoena under Rule 45."). A non-party witness is subject to the same discovery scope as a party under the applicable discovery rules, which are, in turn, subject to the relevance requirements of Rule 26(b). *See* Fed. R. Civ. P. 45 (Advisory Committee's note to the 1970 amendments); *Wells Fargo Bank, N.A. v. Konover,* No. 3:05CV1924, 2009 WL 585434, at *4 (D. Conn. Mar. 4, 2009) ("The permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties.").

Rule 26(b) provides that a party is entitled to discover any non-privileged matter relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Relevance under the Federal Rules "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Sunderland v. Suffolk Cty. New York*, No. CV 13-4838, 2016 WL 3264169, at *2 (E.D.N.Y. June 14, 2016) (stating that, after the December 2015 amendments to Rule 26, relevance is still to be construed as indicated in *Oppenheimer Fund*) (*quoting Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016)). In the Second Circuit, "[t]his obviously broad rule is liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *see also Rodriguez v. Clark*, No. 3:16-CV-390 (CSH), 2017 WL 2369367, at *3 (D. Conn. May 31, 2017) ("[I]t is well-established in federal

9

litigation that the scope of discovery is broad."). "A party may conduct discovery to obtain evidence which is 'relevant' to the claims and defenses in a pending action, where 'relevant' means evidence with 'any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action.'" *Id.* at \*3 (*citing* Fed. R. Evid. 401(a)-(b)). "In light of the general philosophy supporting full discovery of relevant facts, courts rarely order that a deposition not be taken." *Beyer v. Anchor Insulation Co.*, No. 3:13 CV 1576 (JBA), 2016 WL 4197574, at \*4 (D. Conn. Aug. 9, 2016) (internal citation omitted); *Miller v. Nat'l Life Ins. Co.*, No. 3:07-CV-364 (PCD), 2008 WL 11377671, at \*1 (D. Conn. Mar. 13, 2008) ("The Federal Rules of Civil Procedure set out an extremely permissive deposition-discovery regime[.]").

Critically, "[t]he party resisting discovery bears the burden of showing why discovery should be denied." *Stancuna v. Iovene*, No. 3:08-CV-30 (JBA), 2016 WL 11589754, at \*2 (D. Conn. Oct. 31, 2016) (*citing Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)); *see also N. River Ins. Co. v. O&G Indus., Inc.*, No. 3:13-CV-00589 (JAM), 2016 WL 6600490, at \*2 (D. Conn. Nov. 7, 2016) ("The movant bears the burden of persuasion in a motion to quash a subpoena."); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (*citing* Fed. R. Civ. P. 30(a)(1)) ("[T]he rules generally do not place any initial burden on parties to justify their deposition and discovery requests."). The objecting party must demonstrate "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Caro v. Weintraub*, No. 3:09-CV-1353 (PCD), 2011 WL 13233934, at \*2 (D.

Conn. Mar. 4, 2011) (citing *Ferguson v. TD Bank*, N.A., 268 F.R.D. 153, 155 (D. Conn. 2010) (internal citation omitted)).

This Court has broad discretion to compel discovery. *See Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 412 (D. Conn. 2007) ("[T]he court is afforded broad discretion in deciding discovery issues.") (citation omitted); *Grand Cent. P'ship Inc. v. Cuomo*, 166 F.3d 473,488 (2d Cir. 1999) ("We will not disturb a district court's ruling on a motion to compel discovery unless there is a clear showing of abuse of discretion."). District courts in the Second Circuit have further advised that courts "whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Westernbank Puerto Rico v. Kachkar*, No. M8-85 X3, 07-1606, 2009 WL 856392, at *4 (S.D.N.Y. Mar. 27, 2009) (citation omitted). Where relevance is in doubt, the district court is to be permissive. *Id.*[4]

As detailed herein, the Subpoena seeks information that is relevant to CGHA's claim in the Underlying Litigation. Mr. Sternlicht has the burden of justifying his non-compliance, and he cannot do so.

---

[4] While CGHA believes that relevance is clearly established in this instance, should the Court have any doubts, it may transfer the pending motion under Fed. R. Civ. P. 45(f) to District Judge Andrews in the District of Delaware, who presides over the Underlying Litigation. Deference towards the trial court presiding over the underlying case has led several district courts in the Second Circuit to transfer a subpoena dispute back to the sister court for resolution. *See Patriot Nat'l Ins. Grp. v. Oriska Ins. Co.,* 973 F. Supp. 2d 173, 175-176 (N.D.N.Y. 2013) (on argument of opponent that subpoenaed material was irrelevant to case, court held that "relevance argument emphasizes the need for the court where the underlying matter lies to decide the matter"); *Cadence Pharm., Inc. v. Multisorb Techs., Inc.,* No. 16MC22G, 2016 WL 4267567, at *6 (W.D.N.Y. Aug. 15, 2016) (accord); *see also Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.,* No. 3:12MC51, 2012 WL 3656418 (D. Conn. Aug. 23, 2012) (applying pre-2013 Fed. R. Civ. P. 45, court transferred motion to quash nonparty subpoena to court where the underlying action was pending).

### B. Mr. Sternlicht Should Be Compelled to Testify

#### 1. Mr. Sternlicht did not file a timely motion to quash.

As set forth above, on July 23, 2019, counsel for Mr. Sternlicht and Starman agreed to accept service of the Subpoena on behalf of Mr. Sternlicht. The Subpoena set a deposition date of August 14, 2019. Although he objected to the propriety of the Subpoena on relevance and burden grounds via e-mail,[5] Mr. Sternlicht did not timely move to quash or modify the subpoena for testimony or seek a protective order. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *see Aetna Cas. And Sur. Co. v. Rodco Autobody*, 130 F.R.D. 2, 3 (D. Mass. 1990) ("[T]he fact that objections were served *is no excuse whatsoever* not to attend the deposition. If the witnesses considered that they had grounds not to appear, they were required to file a motion for a protective order.") (emphasis in original). Accordingly, there are no grounds on which Mr. Sternlicht can continue to evade his obligation to provide testimony at a deposition. CGHA respectfully requests that the Court compel Mr. Sternlicht to appear for deposition within fourteen (14) days from the issuance of the Court's order on this motion.

#### 2. Mr. Sternlicht possesses relevant, discoverable information, the production of which is not unreasonable or overly burdensome.

As this is an action for enforcement based on alter ego liability, information concerning the structuring of the transaction in which Starman acquired Woodman and simultaneously compelled Woodman to delegate its responsibilities under the Management Agreement to Starwood Hotels, as well as Starman's use of Woodman in the six plus years that Mr. Sternlicht was a Manager of Woodman, is unquestionably relevant to CGHA's claims at issue in this

---

[5] Mr. Sternlicht has not suggested that he contests the deposition on the grounds that the Subpoena fails to allow reasonable compliance time, extends across improper geographical limits, or requires the disclosure of privileged information. *See* Fed. R. Civ. P. 45(d)(3)(A)(i)-(iii).

12

action.  "In light of the general philosophy supporting full discovery of relevant facts, courts rarely order that a deposition not be taken." *Beyer v. Anchor Insulation Co.*, No. 3:13 CV 1576 (JBA), 2016 WL 4197574, at *4 (D. Conn. Aug. 9, 2016) (internal citation omitted); *Miller v. Nat'l Life Ins. Co.*, No. 3:07-CV-364 (PCD), 2008 WL 11377671, at *1 (D. Conn. Mar. 13, 2008) ("The Federal Rules of Civil Procedure set out an extremely permissive deposition-discovery regime[.]").  The information sought is not otherwise protected by the remaining factors to be considered under Fed. R. Civ. P. 26.

Mr. Sternlich himself has gone on public record with comments about the Meridien transaction giving rise to Starman.  Mr. Sternlicht is uniquely in possession of the information concerning his own declarations, including his understanding of the purpose of the Meridien transaction and the formation of Starman.  *See ITT Corp. v. Travelers Cas. & Sur. Co.*, No. 3:12 CV 38 (JAM), 2017 WL 589192, at *4 (D. Conn. Feb. 14, 2017) ("Plaintiffs are entitled to depose [non-party] Sennott, who clearly has direct knowledge of the underlying facts of this case[.]"); *Miller v. Nat'l Life Ins. Co.,* No. 3:07-CV-364 (PCD), 2008 WL 11377671, at *2 (D. Conn. Mar. 13, 2008) (explaining that deposition of corporate official is proper where the executive has "some unique knowledge" of the issues in the case) (*citing Consolidated Rail Corp. v. Primary Industries Corp.*, No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993)).  Further, counsel's argument that Mr. Sternlicht need not appear for a deposition because there are other persons from whom CGHA could obtain the same information is insufficient.  Mr Sterlicht's counsel does not get to decide for CGHA which witnesses CGHA will depose.  Mr. Sternlicht's appearance at a deposition concerning facts and issues on which he has unique knowledge presents no unreasonable burden on him.

**CONCLUSION**

For the foregoing reasons, CGHA respectfully requests that the Court issue an order compelling Mr. Sternlicht to provide testimony at a deposition within fourteen (14) days from entry of the order. CGHA further requests its fees and expenses incurred in connection with this motion pursuant to Rule 45(f).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MCCARTER & ENGLISH, LLP |
| *Of Counsel*: | */s/ Thomas J. Finn* <br> Thomas J. Finn (#20929) |
| David Spears | Paula Cruz Cedillo (#23485) |
| Charlita Mays | McCarter & English, LLP |
| Cynthia Chen | CityPlace I |
| SPEARS & IMES LLP | 185 Asylum Street |
| 51 Madison Avenue | Hartford, Connecticut 06103 |
| New York, NY 10010 | Tel.: (860) 275-6700 |
| (212) 213-6996 | Fax: (860) 724-3397 |
| dspears@spearsimes.com |  |
| cmays@spearsimes.com |  |
| cchen@spearsimes.com | Michael P. Kelly |
|  | Andrew S. Dupre |
|  | Sarah E. Delia |
|  | Renaissance Centre |
|  | 405 N. King Street, 8th Floor |
|  | Wilmington, DE 19801 |
|  | (302) 984-6300 |
|  | mkelly@mccarter.com |
|  | adupre@mccarter.com |
|  | sdelia@mccarter.com |
|  | *Attorneys for Plaintiff Compagnie des Grands Hôtels d'Afrique S.A.* |

Dated: September 4, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, Compagnie des Grands Hôtels d'Afrique S.A.'s Motion to Compel Non-Party Barry Sternlicht to Comply with Deposition Subpoena, along with the supporting documents, was filed electronically and served by electronic mail on anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

In addition, the following persons have been served by e-mail:

*Counsel for Defendant Starman Hotel Holdings, LLC and non-party Barry Sternlicht*

David E. Ross, Esq.
Sean Michael Sirkin, Esq.
ROSS ARONSTAM & MORITZ, LLP
100 S. West Street, Suite 400
Wilmington, Delaware 19801
dross@ramllp.com
msirkin@ramllp.com

Jeffrey L. Willian, P.C., Esq.
Devora W. Allon Esq.
Brandon W. Chamberlin Esq.
Vera C. Esses Esq.
Gilad Y. Bendheim Esq.
Hayley Sarah Stern Esq.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
jeffrey.willian@kirkland.com
devora.allon@kirkland.com
bchamberlin@kirkland.com
vera.esses@kirkland.com
gilad.bendheim@kirkland.com
haley.stern@kirkland.com

*/s/ Thomas J. Finn*
Thomas J. Finn (ct20929)